**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|     Plaintiff, | ) | Crim. No. 3:02CR175 (JBA) |
|  | ) |  |
| -v- | ) |  |
|  | ) |  |
| SAMUEL COLON, | ) | June 6, 2005 |
|     Defendant. | ) |  |
|  | ) |  |
|  | ) |  |

**DEFENDANT COLON'S MEMORANDUM IN SUPPORT OF HIS REQUEST THAT
THIS COURT RESENTENCE HIM IN LIGHT OF UNITED STATES V. BOOKER,
SHEPARD V. UNITED STATES AND UNITED STATES V. CROSBY**

Samuel Colon, the defendant, respectfully submits that for the reasons explained in detail below, this Court should Order a resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005), Shepard v. United States, 125 S. Ct. 1254 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

**Summary of Mr. Colon's Argument**

A re-sentencing of Mr. Colon is required if this Court determines that, by applying the sentencing law as it now exists post-Booker, it would have imposed a sentence that is "materially different" than the 120 month sentence it originally imposed on Mr. Colon. United States v. Crosby, 397 F.3d at 118. Mr. Colon respectfully submits that had the Court known that it was not bound by a particular sentencing guideline range, and had counsel known that a "non-Guideline" sentence was possible and fully availed himself of the opportunity to argue for

1

such a sentence and a lower criminal history category, this Court would have imposed a "materially different" sentence. Mr. Colon's arguments can be summarized as follows.

First, there are numerous circumstances and characteristics of Mr. Colon that would warrant a "non-Guideline" sentence below 120 months. Although the Court previously refused to "depart" for some of these reasons, it did so because it viewed the guidelines as mandatory and concluded that Mr. Colon did not satisfy the exacting legal standard for departure set forth in 18 U.S.C. §3553(b)(1). Now, the Court will be free to impose a lower sentence outside an "advisory" guideline range for any sufficient and appropriate reason, including any or all of the arguments for a "downward departure" previously made by Mr. Colon;

Second, had prior counsel known that a "non-Guideline" sentence was a possibility, he would have raised all arguments in support of such a sentence, and would not have conceded other arguments, all of which would have given the Court additional reason to impose a "materially different" and lower sentence;

Third, Shepard v. United States, 125 S. Ct. 1254 (2005), requires a recalculation of Mr. Colon's criminal history category, which will result in a lower "advisory" guideline range. Thus, even if the Court did not impose a "non-Guideline" sentence, it would impose a significantly lesser guideline sentence in light of this new, lower advisory range and other relevant factors; and

Fourth, since his incarceration, Mr. Colon has embarked on a course of rehabilitation, taking numerous courses of instruction and education. This additional information, not

available previously, can now be properly considered by the Court in imposing a sentence below any "advisory" sentencing guideline range.

**The Crosby Remand**

In <u>Booker</u>, the Supreme Court held that mandatory application of the Federal Sentencing Guidelines violated the Sixth Amendment.  <u>Booker</u>, 125 S. Ct. at 750, 757.   The Court's remedy for this Sixth Amendment violation was to sever from the Sentencing Reform Act two provisions that made the Federal Sentencing Guidelines mandatory.  <u>Id.</u> at 757-58.  Thus, at sentencing, a district court must only "consider" an "advisory" sentencing guideline range, and is permitted to deviate from that range in order to "to tailor the sentence in light of other statutory concerns as well, <u>see</u> § 3553(a) . . .." <u>Id.</u> at 757.

After <u>Booker</u>, the Second Circuit decided <u>Crosby</u>, in which it explained the impact of <u>Booker</u> on federal sentencing.  Apart from the <u>Crosby</u> remand process described below, the <u>Crosby</u> court made certain observations about sentencing after <u>Booker</u>:

> we can identify several essential aspects of <u>Booker/Fanfan</u> that concern the selection of sentences.  First, the Guidelines are no longer mandatory.  Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a).  Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements.  Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, <u>i.e.</u>, a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.  Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

<u>Crosby</u>, 397 F.3d at 113.

3

On March 16, 2005, the Second Circuit issued an Order remanding Mr. Colon's case to this Court for further proceedings in conformity with the remand procedure announced in Crosby. In Crosby, the Second Circuit decided that in cases where, as here, a defendant was sentenced prior to Booker, the proper procedure would be "a remand to the district court, not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence now fully informed of the new sentencing regime, and if so, to resentence." United States v. Crosby, 397 F.3d at 117 (emphasis added).

Thus, the district court must decide if it would have imposed a "materially different" sentence had it know that the sentencing guidelines were no longer mandatory and compliance with them no longer required. The Second Circuit stated:

> A remand for determination of whether to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, under the circumstances existing at the time of the original sentence, if the judge had discharged his or her obligations under the post-Booker/Fanfan regime and counsel had availed themselves of their new opportunities to present relevant considerations, an appellate court will normally be unable to assess the significance of any error that might have been made. . . . . Furthermore, even if a judge, prior to Booker/Fanfan, indicated an alternative sentence that would have been imposed if compliance with the Guidelines were not required, that alternative sentence is not necessarily the same one that the judge would have imposed in compliance with the duty to consider all of the factors listed in Section 3553(a). In addition, such an alternative sentence is not necessarily the same one that the judge would have imposed after presentation by the Government of aggravating circumstances or by the defendant of mitigating circumstances that existed at the time but were not available for consideration under the mandatory Guidelines regime.

JWM/32807/2/68710v1
06/06/05-SPT/

United States v. Crosby, 397 F.3d at 117-118.

"If a district court determines that a nontrivially different sentence would have been imposed, that determination completes the demonstration that the plain error test is met." Id. at 118. Thus, under Crosby, if the Court determines that its original sentence would have been "nontrivially different," the Court must proceed to resentencing in compliance with "all applicable sentencing requirements." Id. at 118 n.20 (citing Fed. R. Crim. P. 32).

In making the determination about whether to resentence in light of Booker/Fanfan and Crosby, the Crosby court suggested that the district court "obtain the views of counsel, at least in writing, but 'need not' require the presence of the defendant, see Fed. R. Crim. P. 43(b)(3)." Id. at 120. Thus, by letter to this Court dated April 28, 2005, Mr. Colon requested an opportunity to provide his views as to why resentencing is appropriate in his case. In response, on May 10, 2005, this Court issued an Order requiring that defendant's memorandum in this regard be filed by June 6, 2005. This submission is in response to this Court's Order.

**Mr. Colon's Guilty Plea and Sentencing**

On September 26, 2002, Mr. Colon pleaded guilty to Counts One and Three of the Indictment. The statutory penalties for these offenses were a mandatory minimum of five years' imprisonment, and a maximum of forty years' imprisonment on Count One, and a maximum of ten years' imprisonment on Count Three. AA 13-14.[1]

---

[1] References to "AA __" are to the Appendix, attached hereto as Exhibit A, that was submitted to the Second Circuit in connection with Mr. Colon's prior appeal.

At Mr. Colon's guilty plea proceeding, the district court explained the applicable "sentencing scheme" to Mr. Colon. AA 42. The Court informed Mr. Colon of these statutory penalties, and then explained the application of the Federal Sentencing Guidelines as follows:

> Now, prior to November of 1987, federal judges had virtually complete discretion on what sentence should be imposed on the individual defendant appearing before the Court. That has changed. <u>The federal sentencing guidelines, which are rules of law, restrict the judge's discretion to imposition of a sentence within a guideline range</u>. That guideline range limits how low a sentence can be imposed or how high a sentence can be imposed. There may be facts about your case that would permit a departure, to lower or to higher, but outside that range. But that does not affect the mandatory five year minimum unless there were a safety valve, which is not applicable here.

AA 46 (emphasis added). The District Court's statement was a clear indication that it felt itself bound by the sentencing guideline range, as prior law dictated. Of course, the Court is no longer so bound, and is constrained only by the statutory mandatory minimum on Count One.

Following Mr. Colon's guilty plea, a United States Probation Officer prepared a Presentence Report ("PSR"). AA 74-86. As this was prior to <u>Booker</u>, the Probation Officer's report did not analyze each of the relevant sentencing factors in 18 U.S.C. §3553(a). Rather, the PSR focused on the application of the sentencing guidelines.

Although the Indictment charged Mr. Colon with conspiracy to possess with intent to distribute and to distribute five grams or more of cocaine base, the Probation Officer concluded that "the investigation established that Samuel Colon was responsible for at least 37 grams of cocaine base and 207 grams of cocaine." AA 77. Thus, the Probation Officer concluded that a higher base offense level of 30 was applicable. AA 78. Further, the

6

Probation Officer added two levels pursuant to U.S.S.G. § 2D1.1(b)(1). AA 78. After a three

level reduction for acceptance of responsibility, the Probation Officer concluded that Mr.

Colon's total offense level was 29. AA 78.

Mr. Colon's prior convictions for failure to appear and manslaughter resulted in a total

of six criminal history points pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(d)(1). AA 79-80.

The Probation Officer concluded that Mr. Colon should be assessed an additional two points

pursuant to U.S.S.G. § 4A1.1(e) because he committed the instant offense less than two years

after his release from imprisonment on April 24, 2001. AA 80. With these two additional

criminal history points, Mr. Colon's criminal history category was elevated from CHC III to

CHC IV, and his sentencing guideline range increased from 108-135 months' imprisonment to

121-151 months' imprisonment. AA 80; U.S.S.G., Chapter 5, Sentencing Table.

Mr. Colon's sentencing took place before <u>Blakely</u>, <u>Booker</u> and <u>Shepard</u>. As such, Mr.

Colon's counsel did not raise objections based on these cases. Nor did he object to the

sentencing guideline calculations. AA 88.

However, Mr. Colon did request that the district court depart downward from this

sentencing guideline range on several grounds: that the government decided, in bad faith, not

to file a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. §

3553(e); that Mr. Colon's disclosure of the factual circumstances of a homicide warranted a

departure based on U.S.S.G. § 5K2.16; that Mr. Colon's physical condition warranted a

departure based on U.S.S.G. § 5H1.4; and that a departure pursuant to U.S.S.G. § 5K2.0 and

18 U.S.C. § 3553(b) was warranted based on the harsh conditions of Mr. Colon's pretrial

confinement. AA 88-100. The government objected to a downward departure on any ground. AA 101-129.

The Court addressed, and rejected, each of these grounds for downward departure. Clearly, the Court's ruling denying Mr. Colon a downward departure was based on its view – correct at the time – that the sentencing guideline range of 121-151 was mandatory, and that any departure from this range needed to be based on factors that were "extraordinary" or not adequately considered by the Sentencing Commission. See 18 U.S.C. §3553(b)(1). The Court made the following ruling with respect to Mr. Colon's request for a downward departure:

> The Court is in complete agreement that that medical record in fact does not demonstrate an extraordinary physical impairment which under the guidelines may be a reason to impose a sentence below the applicable guideline. But physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.
>
> There is without doubt medical problems that Mr. Colon suffers from. There does not seem to be dispute as to what they are. They are asthma; borderline hypertension; chronic venous stasis of the right leg, which is swelling; weight of 457 pounds; an intermittent cellulitis and diabetes tendency. Those are indeed physical impairments, but they are not shown to be what would be considered extraordinary physical impairment under guidelines.
>
> In addition, the medical records have been reviewed and assessed from Wyatt and otherwise, the "otherwise" reflecting on what is claimed to have occurred at Wyatt, and there is nothing that is pointed to that demonstrates what is claimed to be the basis for the other departure under 5K2.0, and that is extreme medical negligence constituting seriously adverse conditions of pretrial confinement.
>
> The medical course was not one which apparently produced resolution of the problems by the defendant's telling, it included an unexpected reaction, but in light of what the kinds of

8

circumstances that have been considered as warranting a departure on this ground, this is far from it.

So, I make a finding, whether or not the defendant is pressing these departure grounds, that while I have the discretion to depart on those grounds, I do not have – the defendant has not met his burden of demonstrating the existence of circumstances of such an extraordinary nature by way of impairment or conditions of confinement to warrant a departure.

The circumstances which Mr. Colon is so troubled by do not in the Court's view demonstrate the sort of bad faith circumstances or any prosecutorial misconduct that would arguably warrant looking behind the government's decision not to file a 5K1.1 motion, and there is a fair amount of support for the proposition that absent a cooperation agreement it is without jurisdiction to do so.

In any event, the Court does not find circumstances evincing misconduct or bad faith. There may be hard feelings, even miscommunications. The government has made clear that it remains open to hearing from Mr. Colon, and particularly in consideration of the potential for a motion under Rule 35 if Mr. Colon's cooperation and assistance to the government hereafter is found to be substantial assistance.

AA 169-171.

The Court did not conduct an explicit analysis of the other §3553(a) factors. Rather, after rejecting the defendant's request for a downward departure, the district court simply sentenced Mr. Colon to the low end of the applicable guideline range, or 121 months in prison on Count One and 120 months' imprisonment on Count Three. AA 172, 176. Indeed, the court clearly expressed its view that Mr. Colon should be sentenced at the bottom-end of the applicable guideline range, stating that it could find "no reason" to do otherwise. AA 172. See also AA 159.

**Argument**

I.    **Resentencing Is Appropriate Because This Court, Applying Booker and Its Progeny, Would Have Imposed A "Materially Different" Sentence**

Resentencing of Mr. Colon is appropriate. Had the Court known that it was not bound by a mandatory sentencing guideline range, and had counsel fully availed himself of the opportunity to argue in support of a "non-Guideline sentence" and challenged Mr. Colon's CHC, this Court would have imposed a lesser, "materially different," sentence. The Court is now free to consider all of the facts and circumstances concerning Mr. Colon, unconstrained by a mandatory sentencing guideline scheme and the need to satisfy the exacting legal standard for downward departure set forth in 18 U.S.C. §3553(b)(1). Moreover, the law as it has evolved since Booker, particularly the Supreme Court's decision in Shepard, will require that the Court recalculate Mr. Colon's criminal history, which will result in a lower "advisory" sentencing guideline range. Thus, even if the Court were to impose a "Guideline sentence," this Guideline sentence would still be lower and thus "materially different." Finally, the stellar post-sentencing accomplishments of Mr. Colon warrant the imposition of a lower, "materially different," sentence.

A.    **Freed From the Requirement to Mandatorily Apply the Guidelines, the Court Would Have Imposed a Sentence of Less than 120 Months**

Prior to Booker, the guidelines were "mandatory and binding on all judges," United States v. Booker, 125 S. Ct. at 750, and sentencing judges were required to impose a sentence within the applicable guideline range "unless the court [found] that there exist[ed] an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . .." 18 U.S.C. § 3553(b)(1). The Booker

10

court held that the mandatory nature of the Guidelines rendered them constitutionally infirm, and, to fix this constitutional infirmity, the Supreme Court severed 18 U.S.C. § 3553(b)(1) from the Sentencing Reform Act, thus rendering the guidelines merely advisory provisions that recommend, rather than required, the selection of particular sentences in response to differing sets of facts. Booker, 125 S. Ct. at 757.

By severing section 3553(b)(1), the Supreme Court gave district courts the authority to exercise broad discretion in imposing a sentence within a statutory range. In exercising this discretion to "impose a sentence sufficient, but not greater than necessary," the district court must consider the factors listed in 18 U.S.C. § 3553(a), meaning that an "advisory" sentencing guideline range is just one among many other statutory factors to be considered in imposing sentence. 18 U.S.C. § 3553(a)(1)-(7).

Although sentencing in federal court has always involved the application of 18 U.S.C. §3553(a), prior to Booker/Fanfan, the section 3553(a) requirement that the sentencing court consider all of these factors "had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met." United States v. Crosby, 397 F.3d at 111. Put another way, the only factor of certain import was the Sentencing Guidelines. Indeed, Subsection 3553(b)(1) required the court to impose a sentence within the Guideline range, and permitted a departure above or below this range only on the basis of circumstances "not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. §3553(b)(1); U.S.S.G.§5K2.0, CMT Background.

11

The stranglehold that the mandatory guideline regime had over federal sentencing is further illustrated by the Booker Court's response to the argument that the departure authority that the district court had pre-Booker somehow made the guidelines not mandatory, thus avoiding the Sixth Amendment issue.  The Court wrote:

> The Guidelines permit departures from the prescribed sentencing range in cases in which the judge "finds that there exists an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." . . . At first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum.  Were this the case, there would be no Apprendi problem.  Importantly, however, departures are not available in every case, and in fact are unavailable in most.  In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible.  In those instances, the judge is bound to impose a sentence within the guideline range.

Booker, 125 S. Ct. at 750.

"Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by Section 3553(a) to 'consider' numerous factors acquires renewed significance."  United States v. Crosby, 397 F.3d at 111.  Thus, full fledged consideration must now be given to the requirements of 18 U.S.C. §3553(a), which provides in relevant part:

> (a)    Factors to be considered in imposing a sentence. --  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.   The court, in determining the particular sentence to be imposed, shall consider --
>     (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>     (2)    the need for the sentence imposed –

JWM/32807/2/68710v1
06/06/05-SPT/

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3) the kinds of sentences available;

   (4) the kinds of sentences and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

     (i) issued by the Sentencing Commission . . .; and

     (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

   (5) any pertinent policy statement –

    (A) issued by the Sentencing Commission . . .; and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).

   The impact on Mr. Colon of this significant change in the law of sentencing is clear, and quite dramatic.  Clearly (and correctly at the time), at Mr. Colon's original sentencing the district court felt bound by the guideline range.  At Mr. Colon's plea, the Court informed Mr. Colon that the guidelines "restrict the judge's discretion to imposition of a sentence within a

JWM/32807/2/68710v1
06/06/05-SPT/

guideline range." AA 46. Moreover, at sentencing, the district court, applying the exacting standard for downward departure that governed at the time, systematically reviewed and rejected each of Mr. Colon's requests for a downward departure from the mandatory guideline range. With respect to these arguments, the Court found that the facts failed to establish the required "extraordinary" situation. AA 169-171.

After rejecting all of these downward departure requests, the court sentenced Mr. Colon to the very bottom of that range. In language that suggests that this Court would have sentenced Mr. Colon to less if it could have, the Court stated : "[t]here is no reason, nor anything in the Presentence Report [why] Mr. Colon should be sentenced other than at the bottom of the guidelines."[2]

Now, the Court can sentence Mr. Colon to less. Freed of the mandatory nature of the guidelines, and of the need to find that the exacting legal standard for departure has been met, the Court can now impose a sentence of less than 120 months – i.e., a "non-Guideline" sentence – on any of the grounds previously advanced by Mr. Colon, or for any other sufficient reason. Indeed, as stated below, the Court may impose such a lesser sentence based

---

[2] The Crosby court identified several types of "procedural errors" that will now be recognized in the post-Booker world. The second type of sentencing error identified by the Crosby court occurred in Mr. Colon's case, and involves a situation when a sentencing judge "mandatorily appl[ies] the applicable Guidelines range that was based solely on facts found by a jury or admitted by a defendant." United States v. Crosby, 397 F.3d at 114. Even though such a sentence may not violate the Sixth Amendment, the sentencing court would have "erred by mandatorily acting under the now-excised requirement of subsection 3553(b)(1)." Id. The court explained that procedural error "is cause for concern because, in many cases, it will be impossible to tell whether the judge would have imposed the same sentence had the judge not felt compelled to impose a Guidelines sentence. It will also be impossible to tell what considerations counsel for both sides might have brought to the sentencing judge's attention had they known that they could urge the judge to impose a non-Guidelines sentence." Id. at 115.

JWM/32807/2/68710v1
06/06/05-SPT/

on circumstances that have arisen since Mr. Colon's first sentencing, such as his post-sentence rehabilitative and educational efforts.

In fact, a full fledged examination of the factors set forth in 18 U.S.C. § 3553(a) will establish that there are appropriate factors warranting the imposition of a sentence less than 120 months, i.e., a "materially different" sentence. Most importantly, the Court will be free to impose a lesser sentence based on its review of the "history and characteristics of the defendant." 18 U.S.C. §3553(a)(1). For example, Mr. Colon has undisputed and serious medical problems, including asthma, borderline hypertension, chronic venous stasis of the right leg, weight of 457 pounds, and intermittent cellulitis and diabetes tendency. See AA 170. Under the new sentencing regime, the Court no longer needs to find that these medical conditions are "extraordinary physical impairments;" rather, the Court is free to consider these characteristics of the defendant, and impose a lesser "non-Guideline" sentence because of them, as long as that sentence is "sufficient, but not greater than necessary, to comply with" 18 U.S.C. §3553(a)(2). See United States v. Hernandez, 2005 U.S. Dist. LEXIS 10026, *14 (S.D.N.Y. 2005) (non-Guideline sentence imposed in light of low probability of recidivism and need for ongoing medical treatment).

Similarly, the Court no longer needs to find that other sentencing guideline provisions governing downward departure, such as U.S.S.G. §5K2.0, have been satisfied before it can impose a lesser sentence based on such factors as adverse conditions of pretrial confinement or Mr. Colon's disclosures to the government, which this Court had previously rejected as permissible grounds for departure under the old sentencing scheme.

JWM/32807/2/68710v1
06/06/05-SPT/

Further, defense counsel will be free to take full advantage of the opportunity to argue for a lesser sentence. Previously, the mandatory nature of the sentencing guidelines affected trial counsel's decisions at sentencing. Defense counsel, operating under the constraint of a mandatory sentencing guideline system, acted upon the premise (correct at the time) that the only way to get below the mandatory sentencing guideline range was to satisfy the exacting legal standard for a downward departure. Although it was clear that Mr. Colon suffered from a terrible medical condition (counsel even displayed that condition to the Court), trial counsel made the decision not to press this medical condition as a "legal" ground for a downward departure because he did not think that it met the then applicable legal standard. See AA 135-137 (defense counsel, in response to a question from the Court, stated "do we qualify legally for a departure on that basis? No, I would say we do not because the necessary language that is required under 5H has been covered"; "So, in answer to the Court's original question, no, I don't have a legal argument with respect to those medical issues.") In light of Booker, there is no reason for counsel to withdraw this, or any other, argument in support of what would now be a "non-Guideline sentence."

The relevant inquiry at this stage is whether the Court, had it known that it was not bound by a mandatory sentencing guideline range, would have imposed a "materially different" sentence. Clearly, for all of the reasons set forth, the Court would have imposed a lesser sentence under this new sentencing scheme, constrained only by the applicable mandatory minimum 60 months penalty on Count One.

16

B.    A Recalculated Advisory Sentencing Guideline Range Will Also Result in a "Materially Different" Sentence

Resentencing is required for the additional reason that the Court, applying the law as it now exists, will have to recalculate Mr. Colon's criminal history, and thus the applicable "advisory" sentencing guideline range.   This recalculation will result in an "advisory" sentencing guideline range that is significantly lower than that applied at Mr. Colon's original sentencing.  Thus, even if the Court were to decide that the above factors do not warrant a "materially different" "non-Guideline sentence," and that a "guideline sentence" is appropriate, this guideline sentence would still be lower and "materially different."

Since the Supreme Court's decision in Apprendi, sentencing courts have been free to increase a defendant's sentence based on the "fact of a prior conviction," without any requirement that the conviction be admitted by the defendant or proven to a jury beyond a reasonable doubt.  This exception to the Apprendi rule was first recognized in Almendarez-Torres v. United States, 523 U.S. 224 (1998).  Although there has been much debate over the continued viability of the Almendarez-Torres exception, see Shepard v. United States, 125 S. Ct. at 1264 (Thomas, J., concurring) ("a majority of the Court now recognizes that Amendarez-Torres was wrongly decided."), the Supreme Court preserved it in Booker and has not expressly overruled it since.  Booker, 125 S. Ct. at 756.

However, the Supreme Court, in Shepard v. United States, has signaled that the Apprendi "fact of a prior conviction" exception is "quite narrow."  United States v. Ngo, 2005 U.S. App. LEXIS 7599, at *8 (7th Cir. 2005).  Shepard involved the application of the Armed Career Criminal Act ("ACCA"), and whether a sentencing court could look to police reports or complaint applications to determine whether a prior conviction was for a "generic" burglary

17

sufficient to trigger an ACCA mandatory minimum.  Shepard v. United States, 125 S. Ct. at

1257.  A plurality of the Court concluded that "[w]hile the disputed fact here can be described

as a fact about a prior conviction, it is too far removed from the conclusive significance of a

prior judicial record . . . to say that Almendarez-Torres clearly authorizes a judge to resolve

the dispute." Shepard v. United States, 125 S. Ct. at 1262.  Thus, the Shepard court

suggested that "the recidivism exception exempts only those findings traceable to a prior

judicial record of 'conclusive significance.'  Otherwise, Sixth Amendment concerns arise."

United States v. Ngo, 2005 U.S. App. LEXIS 7599, at *8.

        After Shepard, the question becomes whether district courts have exceeded the scope of

the prior conviction exception by making factual findings in the context of calculating a

defendant's criminal history category.  The issue has arisen at least once in the Second Circuit.

In United States v. Fagans, 406 F.3d 138, 2005 U.S. App. LEXIS 7176 (2d Cir. 2005), the

Court assessed criminal history points for two prior felonies, and then increased the

defendant's criminal history category from III to IV because the defendant committed the

instant offense while on probation.  Id. at *8.  The Fagans court concluded that these "facts of

a prior conviction" did not implicate the Sixth Amendment, and concluded that "the conviction

itself, and the type and length of a sentence imposed seems logically to fall within [the prior

conviction] exception." Id.

        Significantly, the Fagans court, citing Shepard, acknowledged that the "exact scope of

the phrase 'fact of a prior' conviction is yet to be determined." Id. at *8 (citing Shepard v.

United States, 125 S. Ct. at 1262).  Indeed, in United States v. Ngo, the Seventh Circuit

concluded that the district court, in calculating the defendant's criminal history score, had

resorted to sources of information without the "conclusive significance" of a prior judicial record, and thus acted without the authorization of the Almendarez-Torres exception. United States v. Ngo, 2005 U.S. App. LEXIS 7599, at *11. Specifically, the Ngo court concluded that "the district court's factual finding that Ngo's prior convictions were not part of a common scheme or plan was not authorized by Almendarez-Torres, and because the finding was used to increase Ngo's guideline range, his sentence violates the Sixth Amendment." Id. at *11. See also United States v. Washington, 404 F.3d. 834 (4th Cir. 2005) (sentencing court's finding that prior conviction was for a "crime of violence" under U.S.S.G. §4B1.2(a)(2) violated Sixth Amendment); but see, e.g., United States v. Wilson, 2005 U.S. App. LEXIS 8218 (8th Cir. 2005) (Shepard has not altered the principle that a prior conviction is a sentencing factor for the court).

Similarly, Mr. Colon's CHC was increased (and he therefore received a higher sentence) because the district court made certain factual determinations concerning his criminal history that were neither admitted by him or proven beyond a reasonable doubt. Mr. Colon's eight-point criminal history score was comprised of two essential components: (1) six points for two prior convictions (PSR ¶¶31 and 32), and (2) two points, assessed pursuant to U.S.S.G. §4A1.1(e), because the court found that he committed the instant offense within two years of his release from imprisonment. PSR ¶34. Assuming that under Fagans, the court could conclude that the "fact of a prior conviction" exception warranted the conclusion that Mr. Colon could properly be assessed criminal history points for his two prior convictions, it does not necessarily follow that is constitutional to assess six points for those convictions, or

two points because he committed the instant offense within two years of his release from imprisonment.

That is, the simple "fact of conviction" does not trigger the application of any criminal history points.  Rather, under the guidelines, criminal history points are added for prior convictions **only** after judicial findings of certain facts.  For example, before a court may assess criminal history points, it must determine that the prior conviction is a conviction for "conduct not part of the instant offense," U.S.S.G. §4A1.2(a)(1), that the defendant actually served a period of imprisonment, U.S.S.G. §4A1.2, comment (n.2), or the prior conviction was imposed within the time limits required by the guidelines.  U.S.S.G. §4A1.2(e).  In addition, because the two convictions that netted Mr. Colon's six criminal history points were related to offenses committed when he was 16 years old, AA 79, the district court was required to find that he was convicted as an adult.  See U.S.S.G. §4A1.2(d).  However, if Shepard now forecloses fact finding on these issues because they are not based on prior judicial records of "conclusive significance," there can be no constitutional basis, absent an admission by Mr. Colon or a jury verdict, for a conclusion that a given number of points (here three points for each conviction) should be attributable to a particular conviction.  Thus, Mr. Colon should be placed in Criminal History Category I.

There is also no basis for increasing Mr. Colon's criminal history category pursuant to U.S.S.G. §4A1.1(e).  This provision authorizes a two point increase if Mr. Colon committed "the instant offense less than two years after release from imprisonment . . ." Id.  Any increase pursuant to this provision must rest on a judicial finding that Mr. Colon's offense was committed within two years of his release from imprisonment.  This finding, if it is not made

20

based on "prior judicial records of conclusive significance," is unconstitutional under <u>Shepard</u>, and should result in the elimination of this two-point increase.

Given the district court's very clear intention to sentence Mr. Colon at the bottom of the applicable sentencing guideline range, any reduction of Mr. Colon's CHC could lead to a significantly reduced sentence, and most certainly a "materially different" sentence.

C.    <u>Mr. Colon's Post-Sentencing Rehabilitation Would Also Lead to the Imposition of a "Materially Different" Sentence</u>

For the reasons set forth above, the Court should re-sentence Mr. Colon. At this re-sentencing, not only may the Court consider the record as it existed before Mr. Colon's sentencing, but it may also consider Mr. Colon's current circumstances, particularly what has happened in Mr. Colon's life since his imprisonment, as described below and in the attachments hereto.

Post-sentencing or current circumstances of a defendant are properly considered by the Court. Although <u>Crosby</u> expressed no view on this point, <u>United States v. Crosby</u>, 397 F.3d at 118 n.19, the law is clear that this Court may take Mr. Colon's current circumstances into account. No limitation may be placed on the information that the sentencing court may properly consider in imposing sentence. 18 U.S.C. §3661. In fact, at least one district court in the Second Circuit has interpreted <u>Booker</u> and <u>Crosby</u> as authorizing a sentencing court to consider what happened "after the original sentence to determine the appropriate sentence now." <u>United States v. Murray</u>, 2005 U.S. Dist. LEXIS 9543, *12 (S.D.N.Y. 2005). Indeed, <u>Booker</u> and <u>Crosby</u> clearly state that, except as limited by the rule in <u>Apprendi</u>, the sentencing judge may make the factual findings needed to determine an appropriate sentence, <u>United States v. Booker</u>, 125 S. Ct. at 747 ; <u>United States v. Crosby</u>, 397 F.3d at 113. Further,

21

Crosby, by its citation to United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002), United States v. Crosby, 397 F.3d at 118 n.19, suggests that the rule is that the court may take new information into account and "sentence the defendant as he stands before the court on the day of sentencing." United States v. Quintieri, 306 F.3d at 1230.

Mr. Colon has been incarcerated serving his sentence for almost three years. It has not been idle time. Mr. Colon has taken advantage of many programs and educational courses as a part of his rehabilitation and preparation for an eventual return to society. At last count, Mr. Colon has successfully completed numerous courses and has obtained certifications in the following areas: Basic Principles for Construction (February 7, 2005); Carpentry (January 18, 2005); The Professional in Emergency Management (July 12, 2004); Retrofitting Flood Prone Residential Structures (April 13, 2004); Hazardous Materials for Medical Personnel (April 22, 2004); Radiological Emergency Management (March 30, 2004); Exercise Design (July 1, 2004); Mitigation for Homeowners (May 10, 2004); Money Management (April 20, 2004); Car Dealership (August 2, 2004); Prostate Cancer, Influenza, Your Diet and Your Heart (January, 2004); Diabetes, Mellitus, Hypertension, Hepatitis (January, 2004); Certificate of Achievement, Success Stories (March 17, 2004); Asthma, Sexually Transmitted Diseases, Pulmonary, Tuberculosis (January, 2004); Total Fitness Class (November 1, 2004); and Walk and Run Program Participation (July 7, 2004). The various certificates of achievement that relate to these courses are attached hereto as Exhibit B.

Mr. Colon's post-sentencing activities are a clear indication that he is serious about his rehabilitation and his preparation for a return to society as a law-abiding citizen.

22

**CONCLUSION**

For the foregoing reasons, Mr. Colon respectfully requests that the Court order that a re-sentencing take place in light of <u>Booker</u>, <u>Shepard</u> and <u>Crosby</u>.

Respectfully Submitted,

By:_____
     Joseph W. Martini (ct 07225)
     Pepe & Hazard LLP
     30 Jelliff Lane
     Southport, Connecticut  06890
     (203) 319-4000
     (203) 259-0251 fax
     jmartini@pepehazard.com

JWM/32807/2/68710v1
06/06/05-SPT/

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been sent via first class mail, postage prepaid, this 6th day of June, 2005 to the following:

James K. Filan, Jr., Esq.
Assistant United States Attorney
United States Attorneys Office
915 Lafayette Boulevard, Room 309
Bridgeport, CT  06604

_____
Joseph W. Martini

JWM/32807/2/68710v1
06/06/05-SPT/