UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:02CR00175 (JBA) |
| v. | : | |
| SAMUEL COLON | : | JULY 7, 2005 |

GOVERNMENT'S RESPONSE TO THE
DEFENDANT'S REQUEST FOR RE-SENTENCING

The Government respectfully submits this memorandum in response to the defendant's request for re-sentencing on remand from the United States Court of Appeals for the Second Circuit pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

I.      PROCEDURAL HISTORY

On June 18, 2002, a federal grand jury returned a three count indictment charging the defendant with Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine and Cocaine Base, in violation of 21 U.S.C. § 846 (Count One), Possession with Intent to Distribute Narcotics, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g) (Count Three). On September 26, 2002, the defendant pleaded guilty to Counts One and Three of the indictment.

On July 9, 2003, the defendant was sentenced to a term of imprisonment of 121 months on Count One and 120 months on Count Two, with the terms to run concurrently. Judgment entered on July 14, 2003 and the defendant filed a notice of appeal on July 18, 2003. On March 17, 2005, the Second Circuit entered the

following order: "In light of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), and this Court's decision in United States v. Crosby, 397 F 3d 103 (2d Cir. 2005), this case is remanded to the District Court for further proceedings in conformity with Crosby." The facts and circumstances of the defendant's offenses were set forth fully in the PSR and the United States will not repeat those facts here. Additional facts and conclusions of law related to the original sentencing will be set forth as required.

II.     DEFENDANT'S RE-SENTENCING CLAIMS

The defendant raises four issues that he claims entitle him to re-sentencing. First, he claims that there are numerous circumstances and characteristics involving the defendant that would warrant a "non-Guideline" sentence and that the Court should consider anew the arguments he made for downward departures now that the Court is not bound by mandatory Guideline considerations.

Second, the defendant claims that had prior counsel known that a "non-Guideline" sentence was a possibility, he would have raised all arguments in support of such a sentence and would not have conceded other arguments. Third, the defendant claims that Shepard v. United States, 125 S. Ct. 1254 (2005), requires a recalculation of his criminal history category. Finally, the defendant claims that since his incarceration he has embarked on

a course of rehabilitation and that this information, "not available previously," should now be considered in developing an appropriate advisory guideline.  None of these claims should warrant the Court to re-sentence the defendant.

III.     PURPOSE OF THE CROSBY REMAND

In Booker, the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S. Ct. at 757.  This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to appellate review for "reasonableness."  Id. at 765-66.

In Crosby, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to Booker "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence."  Crosby, 397 F.3d at 117.  In this respect, the Court of Appeals explained that a remand would be necessary to

3

learn "whether a sentencing judge would have imposed a materially different sentence, <u>under the circumstances existing at the time of the original sentence</u>, if the judge had discharged his or her obligations under the post-<u>Booker/Fanfan</u> regime and counsel had availed themselves of their new opportunities to present relevant considerations."  <u>Id</u>. (emphasis added).

This statement of the purpose for <u>Crosby</u> remands makes clear that certain issues are simply irrelevant to this Court's determination on whether to re-sentence.  Specifically, because this Court must determine whether to re-sentence based on "the circumstances existing at the time of the original sentence," <u>id</u>., arguments relating to post-sentencing factors are irrelevant.  Thus, while the defendant argues that upon re-sentencing this Court should consider, <u>inter alia</u>, his rehabilitation since incarceration, those arguments – which, as the defendant admits, pertain to information "not previously available," Def. Mot., at 2-3, and thus arise after his incarceration – are not relevant to the Court's determination here of whether to re-sentence.  Accordingly, the Court should not consider the defendant's post-sentencing rehabilitation argument raised in his fourth claim.

IV.     DISCUSSION

    1.  The Court Should Reject the Defendant's Request for a Non-Guideline Sentence

The defendant claims that there are numerous circumstances and characteristics involving the defendant that would warrant a "non-Guidelines" sentence and that the Court should consider anew the arguments he made for downward departures now that the Court is not bound by mandatory Guideline considerations.  The defendant's argument misinterprets sentencing in the post-Booker regime.

Sentencing in the post-Booker regime, as explained in Crosby, now involves two analytic stages:  first, a determination of the applicable Guidelines range (including any departures); and second, a determination of whether in light of the Guidelines and the other factors listed in § 3553(a), there is any reason to impose a non-Guidelines sentence.  Crosby, 397 F.3d at 113.  Thus, while a court may ultimately decide not to impose a Guidelines sentence, it must first determine the appropriate Guidelines range.  Id.

At the original sentencing, this Court properly determined the appropriate Guidelines range for the defendant.  Indeed, the defendant agreed that the Presentence Report accurately calculated his Total Offense Level at 29 and Criminal History Category at IV, which places him in a Guidelines range of 121 to 151 months.  Sentencing Transcript, at 4.  The defendant notes

this in his brief and again presses his previously rejected arguments for a downward departure.

As part of step one of the post-<u>Booker</u> regime, the departure issues must still be calculated and the Court is not free simply to disregard them. Rather, they must be considered in reaching the appropriate Guideline range. Contrary to the defendant's position, this Court is not free from considering the legal validity of the departure issues, since that would undermine consideration of the Guidelines calculation under <u>Crosby</u>. Only then will the Court make a determination of whether in light of the Guidelines, departure claims and the other factors listed in § 3553(a), there is any reason to impose a non-Guidelines sentence. <u>Crosby</u>, 397 F.3d at 113.

The Court correctly determined that the defendant was not entitled to a downward departure for any of the reasons raised in his sentencing memorandum. These were: (1) that he rendered substantial assistance to the United States and is therefore entitled to a departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e); (2) that he voluntarily disclosed his participation in two previous murders and is therefore entitled to a downward departure pursuant to U.S.S.G. § 5K2.16; (3) that he has an extraordinary physical impairment that qualifies for a downward departure pursuant to U.S.S.G. § 5H1.4; and (4) that the conditions of his pretrial confinement represent "an aggravating

or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described" pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b).

Indeed, the Court carefully considered and rejected the departure claims at the time of sentencing. Furthermore, even though the defendant's prior counsel had conceded that the defendant was not legally entitled to two departures, the Court wisely and correctly determined that the defendant would not have received those departures even if he did not make the concession. The defendant notes that point in brief. Def. Mem., at 8-9. The departure issues were fully and fairly litigated at the time of the original sentencing – including those that were conceded – and there is no basis to revisit these issues now under the advisory guideline regime. In sum, the government relies on its earlier arguments – with which the Court agreed – in responding to the departure issues raised on remand.

The second portion of the post-Booker regime requires consideration of the other factors of 18 U.S.C. § 3553(a). None of these factors warrants a non-Guidelines sentence. These are addressed as follows: (1) the nature and circumstances of the offense and the history and characteristics of the defendant. Here, we have a drug dealing defendant against whom was

attributed only 37 grams of cocaine base and 207 grams of cocaine. As the PSR notes, however, "[t]his is a conservative estimate based on the amount of drugs that were seized during the search of Mr. Colon's apartment on May 1, 2002. This represents but one day of the defendant's involvement in the drug conspiracy. Also seized at the time of his arrest were three handguns – seized from a person who already had a manslaughter conviction. He shot and killed another person, which of course underscores the history and characteristics of the defendant. Under this first factor, the defendant warrants no consideration for a non-Guidelines sentence.

    The second factor, (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . (B) to afford adequate deterrence to criminal conduct . . . (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, clearly demonstrates that this is an appropriate sentence. First, the defendant was convicted of two crimes, drug trafficking and possession of deadly weapons. A sentence of ten years reflects exactly how serious the offenses are, promotes respect and provides just punishment. Drug trafficking is a scourge and the violence

associated with drug trafficking places this defendant's conduct on an entirely different level. This is not a situation in which a defendant was, for instance, selling drugs to support an addiction. He was part of a major conspiracy over an extended period of time. He had killed for the organization in the past. And he possessed deadly weapons after killing someone. The Court should not reduce the defendant's sentence to a non-Guideline sentence. It would be unfair to let a person such as this off so lightly and would undermine the deterrent effect the current sentence provides.

    The third factor, "(3) the kinds of sentences available," shows that this was an extremely fair sentence. The defendant could have been charged with responsibility for much more narcotics that he was. He was a major part of a major drug conspiracy for years, yet he was only made to assume responsibility for what was found on him on the day of his arrest. Other sentences available could have been much higher. Indeed, the PSR at ¶ 47 indicates that the defendant was working holding drugs and then selling drugs for Frank Estrada for years. He had been convicted of manslaughter in 1988 in connection with selling drugs for the Estrada organization, 15 years before his conviction in this case, which also involved selling drugs for the Estrada organization. The defendant could have received a relevant conduct adjustment that put much higher in the Guideline

range. Thus, looking at his history of selling drugs, he could have received a much higher sentence. Therefore, the defendant has already received a tremendous benefit.

Under subsection (4), the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines, the defendant received full consideration of the effect of the guidelines in his case. And, as is clear, the defendant was sentenced at the bottom of the guideline range. There simply is no basis, other than the defendant's pure speculation and conjecture, to conclude that the Court would have sentenced the defendant to a lesser or non-Guideline sentence based on everything that was known to the Court at the time of the original sentence.

Under subsection (5), other than declaring that the Court has now been freed from the mandatory nature of the old Guideline regime, the defendant has noted no policy statement that would warrant a lesser or non-Guideline sentence. In fact, the relevant conduct policy statement would call for a much higher sentence if it was applied, considering the fact that the defendant was only charged with the amount of narcotics found on a single day as opposed to the whole conspiracy. Thus, this section should not lead to a re-sentencing.

Next, under subsection (6), there is the need to avoid

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Under that section, the defendant still received a break. He was not held responsible for the full range of relevant conduct he could have faced. His previous manslaughter conviction for killing a person through his work as a drug dealer in the Estrada organization was properly counted, as was his failure to appear and the fact that he was continuing to engage in criminal conduct within two years of his release from prison. Clearly, the defendant killed when he was 16 years old and has been engaged in criminal conduct continuously since then. There simply is no basis to give this defendant a further break.

In sum, looking at the Guidelines calculation and the factors set forth in section 3553(a), no valid reason exists to re-sentence the defendant, as the Court would not have imposed a materially different sentence under the advisory regime post-Booker. Accordingly, the defendant's motion for re-sentencing should be denied.

    2.   The Court Should Reject the Defendant's Shepard Argument

The defendant next claims that the "fact of his prior convictions" had to either be admitted by the defendant or found by a jury beyond a reasonable doubt and that the Court failed to apply the correct standard. The defendant's argument is misguided.

As an initial matter, in Shepard v. United States, 125 S.Ct. 1254 (2005), the Supreme Court instructed that Sixth Amendment protections apply to disputed facts underlying a prior conviction. Id. at 1262-63. Here, on page 4 of the sentencing transcript, the defendant stated that he did not dispute the criminal history calculation. Indeed, Shepard focused on disputed facts regarding the circumstances of prior convictions and how those disputed facts were to be addressed by sentencing courts. Here, on the other hand, these were undisputed facts of prior convictions, not disputed facts concerning the circumstances of prior convictions. In many ways, this consideration is very much like those considerations this Court has addressed in determining whether crimes were crimes of violence in the immigration context. The Court would have to look at the elements of the crime under 18 U.S.C. § 16 or whether there was violence inherent in the crimes themselves. Here, all we are talking about is the fact of the prior conviction, when it happened and how it is counted under the guidelines. There is nothing to look behind to reach this conclusion. There are no judgments that must be reached. That fact, or existence, of the convictions speak for themselves. While an interesting and imaginative argument, there is no heft to the defendant's argument and Shepard will not require recalculation of the defendant's criminal history. In sum, the defendant's argument

fails to carry any convincing weight.

## CONCLUSION

For the reasons set forth above, the defendant's motion for re-sentencing should be denied in its entirety.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


JAMES K. FILAN, JR.
ASSISTANT UNITED STATES ATTORNEY
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000
FEDERAL BAR NO. ct15565

LARA NEUMARK
LAW STUDENT INTERN

CERTIFICATION

This is to certify that a copy of the foregoing was sent via United States mail, postage prepaid, on this date, to:

Joseph W. Martini
Pepe & Hazard
30 Jelliff Lane
Southport, CT 06890-1436

Dated at Bridgeport, Connecticut this 7th day of June, 2005.

                                        _____
                                        JAMES K. FILAN, JR.
                                        ASSISTANT UNITED STATES ATTORNEY